COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| RAUL PARRA, | § | No. 08-09-00059-CR |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | 409th District Court |
| THE STATE OF TEXAS, | § | |
| | | of El Paso County, Texas |
| Appellee. | § | |
| | | (TC# 20060D03360) |
| | § | |

**O P I N I O N**

Appellant, Raul Parra, was convicted of aggravated sexual assault of a child and sentenced to life imprisonment. In two issues on appeal, Appellant claims the trial court failed to follow the procedures of article 36.27 and that a juror engaged in misconduct. For the reasons that follow, we affirm.

**BACKGROUND**

The factual recitations of the offense are well known to the parties, and we need not recite them here in detail. An abbreviated recitation shows that on July 18, 2006, Appellant was invited to a Father's Day dinner at the six-year-old victim's apartment. Appellant's son and the victim later went to Appellant's apartment, which was in the same complex, to watch a movie in the living room. During the movie, Appellant took the victim to his bedroom, laid her on the bed, pulled her pants and underwear down, and contacted his penis with her anus. As the molestation continued, Appellant's wife walked in, and an argument ensued, ending with Appellant's flight from the apartment. The police were called, and Appellant was found nearby at a convenience store.

**ARTICLE 36.27**

Appellant's first issue contends that the trial court, during the punishment stage, committed error by failing to inform him of a jury note before responding to the same in violation of article 36.27, and as a result, he was not given the opportunity to prevent the trial court from "coercing" the jury, through its response, to return a life sentence.[1]  The State responds that Appellant's complaint is not preserved for our review.

*Applicable Facts*

During the second day of punishment deliberations, four notes were sent to the judge.  The first, at 10:07 a.m., requested a short break as the jurors were "at a dead end."  The second, at 1:16 p.m., requested a dictionary, and the third, at 1:34 p.m., stated that some jurors wanted to leave.  Nothing in the record indicates that the judge responded to these notes.  However, at 2:33 p.m., the jury informed the judge that two jurors wanted to "walk out," wanted "to talk to the judge," and wanted "to know the consequences."  The note indicated that the jury was "still deliberating," but those two jurors did "not want to hear anymore."  In response, the judge, after obtaining the presence of Appellant and his counsel, called the jury into the courtroom and prior to informing the parties as to the contents of the note or how the court would respond, instructed the jury as follows:

> The record should reflect the attorneys for the State, the attorney for the defendant, the defendant are present in the courtroom.  The Court has received a message from the jury that needs my response.
>
> Ladies and gentlemen of the jury, shortly I'm going to send you back into the jury room to see if you want to break for the day.  You will be sequestered.  It appears that there is a need for court reflection and maybe a break.  The only break I can give you is breaking for the rest of the day.  Like we did yesterday.  So shortly I will send you

---

[1]  Article 36.27 mandates that the trial court, upon receiving a note from the jury, notify the defendant of the note and the court's proposed response such that the defendant has an opportunity to object to the response.  *See* TEX. CODE CRIM. PROC. ANN. art. 36.27 (Vernon 2006); *Word v. State*, 206 S.W.3d 646, 650 (Tex. Crim. App. 2006).

into the jury room so that you can indicate to me whether that is your wishes at this time or whether you wish to continue to deliberate.

In response to the question that was asked, here's my response. We have provided for you as nice an accommodation as I possibly can. If you don't want those, I will put you in the county jail and bring you tomorrow so that you can continue to deliberate with your fellow jurors.

I have never had to do this. And I don't want to. But, understand one thing, you are the judges, the exclusive judges, of the facts and the credibility of the witnesses. And I will continue to respect you as a co-judge and not interfere with your job. I am the judge of the law. And in the way this court is conducted.

I do not want to put any of you in the county jail. But do not test me. Because I will not hesitate to put you in the county jail and bring you over to deliberate with your fellow jurors if I get that threat again.

Go back into the jury room and let me know whether you wish to continue your deliberations.

Appellant did not object to the judge's comment.

At 2:58 p.m., the jury informed the court that they wished to continue deliberating, and at 3:20 p.m., the jury reached a unanimous verdict. When the trial court asked if there was any reason why the sentence should not be imposed, Appellant stated that there was not.

Later, Appellant filed a motion for new trial complaining for the first time of the trial court's response to the jury note. According to the motion, the trial court did not inform him of the jury note, he could not have foreseen the instructions that were about to be given to the jury, and the court committed egregious error by threatening to place the jury in the county jail. A hearing ensued, and Appellant's counsel claimed that when the note was received, the judge summoned him to the courtroom without explaining why, and did not show him the jury's note until after the judge responded to the jury. The prosecutor admitted that the note was not shown to the parties until after the instructions were given but asserted that the judge, prior to responding to the note, did tell the parties that there was a jury note and that the court was going to address the jury. The prosecutor

further noted that Appellant did not object, either when the judge stated he was going to address the jury or after the judge made the comments. The judge could not recall whether he informed the parties of his intent before bringing the parties into the courtroom, but he did remember making the parties aware of the note before responding to it. When the judge asked why Appellant did not object if he thought his actions were so egregious, Appellant responded that when it was happening, he did not know what was going on.

*Multifarious*

Initially, we address the State's argument that Appellant's issue is mulitfarious and therefore waived. A multifarious point embraces more than one specific ground in a single issue and thus presents nothing for appellate review. *Heiselbetz v. State*, 906 S.W.2d 500, 512 (Tex. Crim. App. 1995); *Stults v. State*, 23 S.W.3d 198, 205 (Tex. App. – Houston [14th Dist.] 2000, pet. ref'd).

According to the State, Appellant's first issue appears to be two-fold, that is, that Appellant is complaining of the trial court's failure to follow the statutory procedure upon receiving a jury note, and of the content of the trial court's response to the jury. We disagree. Appellant phrased his issue as "whether the trial court erred by failing to notify defense counsel of the jury's note and, thus, failed to allow defense counsel an opportunity to suggest a response to the jury which was not coercive in nature." He then argues, citing article 36.27, that the "jury's note was not provided to defense counsel for an opportunity to suggest a less-coercive instruction," the "law required the court to inform defense counsel of the contents of the note," the "trial court did not know that it had a legal obligation to inform defense counsel of the note," and "counsel was not provided an opportunity to review the jury's note, and was not given an opportunity to review the trial court's instruction. Certainly, Appellant would have, had he been given the opportunity, crafted a more subtle message and not threatened incarceration." This is a complaint that the trial court failed to follow the

procedures outlined in article 36.27, and we need only address the content of the comment if we find error. Therefore, we find a single point of error alleging failure to follow statutory procedures.

## *Failure to Object*

Conceding that the trial court failed to follow the procedures outlined in article 36.27, the State also argues that Appellant failed to preserve his issue for our review as he did not timely object to the court's fallacy. Preservation of error is a systemic requirement that we must review. *See Jones v. State*, 942 S.W.2d 1, 2 n.1 (Tex. Crim. App. 1997). If an issue has not been preserved for appeal, we cannot address the merits of that issue. *See Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009) (citing *Haley v. State*, 173 S.W.3d 510, 515 (Tex. Crim. App. 2005)). An objection that the trial court failed to follow the procedures in article 36.27 is required to preserve such error for our review. *See Word*, 206 S.W.3d 651-52; *Hawkins v. State*, 660 S.W.2d 65, 81 (Tex. Crim. App. 1983); *Verret v. State*, 470 S.W.2d 883, 887 (Tex. Crim. App. 1971); *Boatwright v. State*, 933 S.W.2d 309, 311 (Tex. App. – Houston [14th Dist.] 1996, no pet.); *Harris v. State*, 736 S.W.2d 166, 166-67 (Tex. App. – Houston [14th Dist.] 1987, no pet.); *Morales v. State*, No. 08-06-00067-CR, 2009 WL 223446, at *6-7 (Tex. App. – El Paso Jan. 30, 2009, pet. ref'd) (op., not designated for publication). Moreover, that objection must be made as soon as the grounds for the objection is apparent. *See* TEX. R. APP. P. 33.1; *Lagrone v. State*, 942 S.W.2d 602, 618 (Tex. Crim. App.), *cert. denied*, 522 U.S. 917, 118 S.Ct. 305, 139 L.Ed.2d 235 (1997).

Although we do not condone the trial judge's actions in failing to follow the procedural mandates of article 36.29, nor do we approve of the content of his comments to the jury, we are constrained to hold that any error is not preserved for our review. *See Ford*, 305 S.W.3d at 532. Appellant did not object prior to the trial court's address to the jury despite being aware that there was a jury note. Nor did Appellant object after the trial court made his comments to the jury.

Further, when the jury returned to the courtroom with a verdict, Appellant made no objections, nor did he object when the trial court asked if there was any reason why the sentence should not be imposed. Rather, Appellant waited until he filed a motion for new trial to raise the complaint. That was simply too late. We therefore hold Appellant failed to make a timely objection to the trial court's failure to follow article 36.27. *See Boatwright*, 933 S.W.2d at 311 (although defendant and counsel were not present when the trial court responded to the jury's note, defendant was still required to timely object when he returned to the courtroom and learned of the judge's action or file a bill of exceptions).

*Barnett v. State*, 189 S.W.3d 272 (Tex. Crim. App. 2006) is not to the contrary. In *Barnett*, the jury informed the court that it had reached a unanimous verdict of not guilty on two counts of aggravated sexual assault, but during the trial court's poll of the jury, the jurors were actually split eleven to one in favor of not guilty on count one and eleven to one in favor of guilty on count two. *Barnett*, 189 S.W.3d at 274. A short recess was taken so that the defendant could form any objections, but when the recess concluded, the defendant did not make any objections. *Id*. After the trial court polled the jury again with the same results, he singled out two jurors, told them that we "have a problem with both of you," asked whether they could reconsider their votes, and then told the jury to continue with deliberations. *Id*. at 274-75. When the jury left the courtroom, the trial court noted that he could declare a mistrial if the jury failed to reach a unanimous verdict, and the defendant asked for a mistrial, claiming that the jurors may compromise their verdict in order to achieve a result. *Id*. at 275. The trial court noted that if the jury could not reach a verdict that evening, he would reconsider granting a mistrial. *Id*. Twenty minutes later, the jury sent a note indicating that a unanimous verdict on both counts were reached. *Id*. The defendant then reurged his motion for mistrial, which was denied. *Id*.

On appeal, the defendant did not complain of the polling procedure, that is, that the court went beyond the scope of article 37.05 by asking how each juror voted,[2] but rather of the content of the trial court's comments to the jury, that is, whether certain jurors could change their verdict with further deliberations. *Id*. at 277. The Court of Criminal Appeals noted that if the complaint had been about the polling procedure, the defendant was required to object to the same, but since the complaint focused on the content of the trial court's comments, the defendant did not forfeit his right to complain as he "could not reasonably have foreseen that the trial court would tell the two hold-out jurors that 'we do have a problem with both of you' and ask them if they would be able to change their vote." *Id*. at 278.

Here, Appellant's complaint, although asserting that the content of the response was coercive and harmful, alleges noncompliance with article 36.27. As we have already discussed, Appellant's issue is "whether the trial court erred by failing to notify defense counsel of the jury's note and, thus, failed to allow defense counsel an opportunity to suggest a response to the jury which was not coercive in nature." And his argument on that issue asserts that "[t]he trial court did not know that it had a legal obligation to inform defense counsel of the note," that "counsel was not provided an opportunity to review the jury's note," and that counsel "was not given an opportunity to review the trial court's instruction." Thus, because Appellant's complaint on appeal was that the trial court violated the statutory procedure in responding to the jury note, Appellant was required, as the Court of Criminal Appeals noted in *Barnett*, to voice a timely objection. *Barnett*, 189 S.W.3d at 277. Appellant did not do so.

---

[2] *See* TEX. CODE CRIM. PROC. ANN. art. 37.05 (Vernon 2006) (providing that the "State or the defendant shall have the right to have the jury polled, which is done by calling separately the name of each juror and asking him if the verdict is his. If all, when asked, answer in the affirmative, the verdict shall be entered upon the minutes; but if any juror answer in the negative, the jury shall retire again to consider its verdict").

Finding Appellant failed to timely object, we reluctantly hold Appellant's first issue is not preserved for our review and overrule the same. *See Ford*, 305 S.W.3d at 532-33; *Boatwright*, 933 S.W.2d at 311.

## JUROR MISCONDUCT

Appellant's second issue contends that the trial court erred by failing to grant his motion for new trial based on juror misconduct. According to Appellant, Juror McCarty, who was selected as a juror, lied on her juror questionnaire, stating that she had never been a victim of a crime when in fact she was a victim of domestic violence and child sexual abuse. Thus, Appellant concludes that she withheld information that hindered his ability to exercise his strikes and prejudiced his right to a fair trial.

### *Standard of Review*

We review a trial court's ruling on a motion for new trial for an abuse of discretion. *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007). In so doing, we view the evidence in the light most favorable to the trial court's ruling, upholding the decision if it was within the zone of reasonable disagreement. *Id.*; *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004). We decide whether the trial court's decision was arbitrary or unreasonable, but we do not substitute our judgment for that of the trial court. *Webb*, 232 S.W.3d at 112. A trial court abuses its discretion only when no reasonable view of the record could support the ruling. *Id.*; *State v. Herndon*, 215 S.W.3d 901, 907 (Tex. Crim. App. 2007).

### *Applicable Facts*

Following a comment by one veniremember that her kids were molested and by another that he could not be fair because of the type of case involved, the trial court, during voir dire, questioned how many jurors, "because of any personal happenings to you, family members or loved ones or

close ones, could not be fair in this type of case, not having heard one bit of evidence so far; and who would already go into the jury box, and say, 'Regardless of what the evidence is, based on what's happened in my life or the people that I know and love, I am not going to be fair . . . .'" Juror McCarty did not respond to this question or indicate that she could not be fair. Subsequently, during Appellant's voir dire, counsel questioned whether any juror could not be fair and impartial in this type of aggravated-sexual-assault-of-a-child case, and again, Juror McCarty did not respond. Counsel also asked whether any of the veniremembers knew anyone that had been accused of a crime. Although Juror McCarty responded that she did and that the case was still pending, counsel did not ask her to further explain the circumstances, nor did he ask to speak to her individually. Juror McCarty was not called for an individual voir dire. After strikes were had, Juror McCarty was selected as Juror One.

In his motion for new trial, Appellant asserted juror misconduct. According to the motion, a review of the jurors' written questionnaires revealed that Juror McCarty had indicated that she was never the victim of a crime. However, two exhibits attached to Appellant's motion for new trial belied the juror's assertion. First, an application for a protective order filed by Juror McCarty in 1996 alleged that she was a victim of domestic violence, and second, an affidavit by Juror Gonzalez, who served with Juror McCarty in Appellant's trial, averred that she mentioned several times during deliberations that she was sexually abused by her father as a child. Appellant's counsel claimed to have relied on Juror McCarty's answers in the written questionnaire and that he would have either asked to voir dire Juror McCarty individually or lodged a for-cause or peremptory challenge against her had he known that Juror McCarty was actually the victim of other crimes.

At the motion-for-new trial hearing, Juror McCarty's questionnaire was admitted and over the prosecutor's objection, so was the protective-order application. However, the prosecutor's

objection to the admission of Juror Gonzalez's affidavit under Rule 606(b) was sustained. Then, relying on argument, Appellant asserted that Juror McCarty "did not give [him] an opportunity to consider what the – what she had been a victim of and did not give [him] an opportunity to properly exercise [his] peremptory challenges or challenges for cause." The trial court denied the motion.

### The Law

In all criminal prosecutions, the accused has a right to a fair trial by an impartial jury. U.S. CONST. amend VI; TEX. CONST. art. I, § 10. The voir dire process is designed to ensure that an impartial and truthful jury will perform the duties it is assigned. *Armstrong v. State*, 897 S.W.2d 361, 363 (Tex. Crim. App. 1995). A juror who withholds material information during voir dire denies counsel the opportunity to exercise his challenges, thus hampering the selection of a disinterested and impartial jury. *Franklin v. State*, 12 S.W.3d 473, 477-78 (Tex. Crim. App. 2000). Counsel must, however, be diligent in eliciting pertinent information from prospective jurors during voir dire in an effort to uncover potential prejudice or bias. *Gonzales v. State*, 3 S.W.3d 915, 917 (Tex. Crim. App. 1999). He must ask specific questions, not rely on broad ones, to satisfy this obligation. *Id*. at 916-17. Therefore, if "a prejudiced or biased juror is selected without fault or lack of diligence on the part of defense counsel," then error occurs based on the juror's withholding of information. *Gonzales*, 3 S.W.3d at 916-17; *Brandon v. State*, 599 S.W.2d 567, 577 (Tex. Crim. App. 1979), *vacated on other grounds*, 453 U.S. 902, 101 S.Ct. 3134, 69 L.Ed.2d 988 (1981). But unless defense counsel asks the necessary questions, any purportedly material information which a juror fails to disclose is not really "withheld" so as to constitute misconduct which would warrant a reversal. *Gonzales*, 3 S.W.3d at 916-17.

### Childhood Sexual Abuse

Initially, we note that we may not consider whether Juror McCarty was a victim of child

sexual abuse for two reasons. First, the affidavit was not admitted at the new-trial hearing; therefore, it was merely a pleading. *See Rouse v. State*, 300 S.W.3d 754, 762 (Tex. Crim. App. 2009); *Jackson v. State*, 139 S.W.3d 7, 20 (Tex. App. – Fort Worth 2004, pet. ref'd) (affidavits attached to motions are not evidence but merely pleadings that authorize the introduction of supporting evidence; thus, to constitute evidence, the affidavits must be introduced as evidence at the hearing on the motion). Second, the affidavit was not competent evidence as Rule 606(b) prohibits courts from delving into what jurors discussed during deliberations.[3] *See* TEX. R. EVID. 606(b); *State v. Krueger*, 179 S.W.3d 663, 665-66 (Tex. App. – Beaumont 2005, no pet.); *Hines v. State*, 3 S.W.3d 618, 621 (Tex. App. – Texarkana 1999, pet. ref'd) (prohibiting trial court from considering what jurors discussed during deliberations). Consequently, if Juror McCarty withheld information on her written questionnaire, we need only consider whether she was a victim of domestic violence.[4]

*Domestic Violence*

The facts in this case are similar to those in *Gonzales*. There, the juror answered "no" in response to whether he had ever been an accused, a complainant, or a witness in a criminal case, on the written questionnaire. *Gonzales*, 3 S.W.3d at 916. Later, the defendant learned that the juror was

---

[3]  Appellant seems to argue that Rule 606(b) violates due process by asserting that the prosecutor erroneously believed that a juror may not provide an affidavit to establish juror misconduct as "[t]o espouse such a position would make jury misconduct an impossibility." First, the prosecutor was not arguing that a juror may *never* provide an affidavit to support juror misconduct, but rather that a juror affidavit cannot delve into what the jurors discussed during deliberations. *See* TEX. R. EVID. 606(b) (providing that although "a juror may not testify as to any matter or statement occurring during the jury's deliberations," a juror may testify to whether any outside influence was improperly brought to bear upon any juror or to rebut a claim that the juror was not qualified to serve). Second, this due-process claim has been routinely rejected in Texas. *See Golden Eagle Archery, Inc. v. Jackson*, 24 S.W.3d 362, 374-75 (Tex. 2000); *Dunklin v. State*, 194 S.W.3d 14, 19-20 (Tex. App. – Tyler 2006, no pet.); *White v. State*, 181 S.W.3d 514, 524-26 (Tex. App. – Texarkana 2005), *aff'd*, 225 S.W.3d 571 (Tex. Crim. App. 2007); *Glover v. State*, 110 S.W.3d 549, 552 (Tex. App. – Waco 2003, pet. ref'd); *Richardson v. State*, 83 S.W.3d 332, 362 (Tex. App. – Corpus Christi 2002, pet. ref'd); *Sanders v. State*, 1 S.W.3d 885, 888 (Tex. App. – Austin 1999, no pet.).

[4]  The State, on appeal, renews its objection made in the trial court that the protective-order application was inadmissible as it was not properly authenticated. However, the State's contention, which consists of only two sentences without citation to authority, is inadequately briefed, and we will not address it. *See* TEX. R. APP. P. 38.1.

a complainant in a pending criminal case and a motion for new trial followed, contending that the juror withheld information that deprived him of his ability to intelligently exercise his peremptory challenges. *Id.* The Court of Criminal Appeals noted that juror questionnaires are "vulnerable to misinterpretation" and thus the burden falls on counsel to exercise due diligence to elicit pertinent information during voir dire. *Id.* at 916-17. "[D]iligent counsel," according to the Court, "will not rely on written questionnaires to supply any information that counsel deems material. Counsel who does otherwise is simply not diligent." *Id.* at 917. Because counsel did not follow up on the written questionnaire by "verify[ing] whether prospective jurors who returned juror questionnaires had been involved in criminal cases as that question was meant to be understood," the Court determined that the juror did not withhold information, and therefore, there was no juror misconduct. *Id.* at 917-18.

Similarly, here, the written question asked whether she had ever been the victim of a crime. Juror McCarty could have understood the question as referring only to major crimes such as murder, crimes that were at issue in this case, or other crimes that were actually prosecuted in a court at law. Juror McCarty may have further understood that her application for a protective order did not make her a victim of crime since there was no final determination by a court that she was indeed a victim of domestic violence.[5] It was thus counsel's duty to elicit such information during voir dire. He did not. As counsel did not exercise due diligence by explaining, on voir dire, the question "as that question was meant to be understood," we decline to hold that Juror McCarty withheld information. *Gonzales*, 3 S.W.3d at 917-18; *see also Brasher v. State*, 139 S.W.3d 369, 374 (Tex. App. – San Antonio 2004, pet. ref'd) (finding no juror misconduct when "[n]othing in the record indicates [the juror] would have withheld information . . . had counsel met his obligation to ask specific follow-up questions . . . ."). Therefore, there was no juror misconduct, and we overrule Appellant's second

---

[5] Appellant did not produce the protective order.

issue.

## CONCLUSION

Having overruled Appellant's issues, we affirm the trial court's judgment.


                                 GUADALUPE RIVERA, Justice

July 14, 2010

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)